IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BETSI SPAIN, | Case No. 6:15-cv-01647-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security<br>Administration, | |
| Defendant. | |

**BECKERMAN, Magistrate Judge.**

Betsi Spain ("Spain") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Court AFFIRMS the Commissioner's decision.

///

///

1- OPINION AND ORDER

## BACKGROUND

Spain was born in May 1984, making her 23 years old on June 1, 2007, the alleged disability onset date. (Tr. 251.) Spain has a high school education, and has worked at fast food restaurants. (Tr. 83-84.) Spain alleges disability due to "low average IQ," post-traumatic stress disorder ("PTSD"), learning disorder, depression, anxiety, avoidant and dependent personality traits, problems with primary support group, and a low GAF score. (Tr. 230.)

On September 10, 2007, psychologist Dr. Norvin Cooley evaluated Spain at the request of her criminal defense attorney. (Tr. 278-96.) He examined her criminal history in detail. Spain was charged with two counts of theft I, seven counts of negotiating a bad check, five counts of theft II, one count of theft of services, and one count of fraudulent use of a credit card on April 24, 2007; six counts of theft I on June 20, 2007; and burglary I, identity theft, forgery II, theft II, criminal possession of a forged instrument, and theft III on July 6, 2007. (Tr. 278-80.) Spain's mother died from a brain tumor when she was sixteen, and her mother's death still weighed on her at the time of the evaluation. (Tr. 281.) Her mother's illness was hard on Spain's family because, in addition to medical care, her mother's behavior became hypercritical in the twelve years she was affected by the tumor. (Tr. 282.) Spain lived in constant fear her mother would die at any moment, and her mother and father had marital difficulties. (*Id.*) Both of her parents abused alcohol and marijuana around her when she was young. (*Id.*) She was in special education classes because she had a reading problem, and her Corvallis School District Individualized Education Program stated that she needed special assistance with written language and speech and language. (*Id.*)

In the evaluation, Dr. Cooley noted that Spain appeared to have low average intellectual abilities. (Tr. 285.) While she claimed problems with short-term and immediate memory, he

noted that there were no indications of memory issues during the interview. (*Id.*) Dr. Cooley administered several objective tests and found that Spain had a low average IQ, low average verbal skills, a significantly impaired ability to think abstractly, better than average perceptual tracking, difficulties with activities that require sustained attention, and substantial academic deficits. (Tr. 285-87.) However, Dr. Cooley noted that Spain may not have participated in the tests in a "completely forthright manner," and "the nature of her responses might lead the evaluator to form a somewhat inaccurate impression of the client based upon [her] style of responding." (Tr. 288.) Dr. Cooley concluded that Spain's responses indicated significant depression and were consistent with PTSD, dysthymia, learning disorder, and avoidant and dependent personality traits. (Tr. 293-94.)

On July 2, 2012, nurse practitioner Deidre Greene noted that Spain's medications included Amitriptyline, melatonin, omeprazole, Zoloft, Implanon, and vitamin D3. (Tr. 456.)

On August 14, 2013, licensed psychologist Dr. Scott Alvord evaluated Spain and found that she suffered from bipolar affective disorder type II, PTSD, and intellectual deficits. (Tr. 628.) He further found that her memory was worse than expected and could reflect a cognitive disorder. (Tr. 628.) He opined that Spain functioned in the high elementary school range academically, and likely would "struggle significantly with maintaining consistency in a job setting given severe anxiety as well as inconsistent mood functioning." (*Id.*)

On October 4, 2013, Dr. Alvord completed a mental residual functional capacity ("RFC") assessment and concluded that Spain would be precluded from functioning independently, appropriately, and effectively for at least ten to fifteen percent of the workday in every category assessed, including understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (Tr. 617-21.) Overall, Dr. Alvord concluded that Spain would be

3- OPINION AND ORDER

unable to perform independently, appropriately, and effectively for fifty percent of the workday. (*Id.*)

Notes from group therapy sessions and private appointments from August 2013 to March 2014 detail Spain's struggles with her family, finding an apartment, and identifying coping strategies for anxiety and depression. (Tr. 650-79, 694-98.)

On January 16, 2014, Spain reported to the Office of Vocational Rehabilitation Services that she wanted a job where she could "answer phones, greet people and maybe show people where things are." (Tr. 264.) The rehabilitation counselor noted that Spain was "good with people." (Tr. 269.)

On January 29, 2014, social worker Jeremy Springer wrote a letter on behalf of Spain. (Tr. 690-91.) Springer and Spain met one to two times per month for over a year. (*Id.*) Springer opined that Spain was severely depressed and occasionally hypomanic, and exhibited symptoms of PTSD. (*Id.*) Springer concluded that Spain:

> could not function consistently in a work setting which required consistent attendance at specified hours, ability to follow any but basic processes and directions, or prolonged/repetitive tasks, without extremely flexible expectations and accommodations. Additionally, I do not expect that she would respond well to criticism from supervisors and would likely come to avoid the work setting altogether, or be triggered into a depressive or hypomanic episode which would further negatively impact her work, as evidenced by past employment experiences.

(*Id.*)

An administrative law judge ("ALJ") convened a hearing on February 11, 2014, at which Spain testified about the limitations resulting from her impairments. (Tr. 57-94.) Spain testified that she last worked in 2007, and stopped because she went to jail. (*Id.*) When asked why she told Dr. Alvord that she had never worked anywhere longer than four months when she had actually worked for four years at Wendy's, she said "he never asked about Wendy's." (*Id.*) She

4- OPINION AND ORDER

also stated that the managers at Wendy's were "covering for [her]" and her cash register often came up with an incorrect balance. (*Id.*) She alleged an overworked shoulder since she was sixteen years old for which she received cortisone injections. (*Id.*) She volunteered at the Habitat for Humanity ReStore and took a computer class, and used a CPAP machine that helped with her sleep apnea. (*Id.*) She assisted her father after his knee surgery and watched her sister's two children. (*Id.*) She alleged a need for a therapy companion cat while she works because it reduces her anxiety. (*Id.*) She alleged no problems with walking, sitting, bending over, crouching, and walking up stairs, but alleged some difficulty standing for long periods of time and raising her arms over her head. (*Id.*)

The ALJ posed a series of questions to a vocational expert ("VE"), who also testified at Spain's hearing. The ALJ first asked the VE to assume that a hypothetical worker of Spain's age, education, and work experience was limited to lifting 20 pounds occasionally and 10 pounds frequently; can stand and/or walk eight hours and can sit for eight hours with normal breaks; should not reach overhead bilaterally; is limited to understanding, remembering, and carrying out simple instructions that could be learned in thirty days or less; and is limited to occasional public and coworker contact, no work directly with the public, and no group tasks with other employees. (Tr. 84.) The hypothetical worker was further limited by not working with money or performing record-keeping duties. (*Id.*) The VE testified that the hypothetical worker could not perform Spain's past work as a fast food worker. (*Id.*) However, the VE testified that other jobs existed in the national economy that the hypothetical worker could perform, such as office helper, security guard, meter reader, and escort vehicle driver. (Tr. 85.) The VE testified that if an employee was off task more than ten percent of the workday, that employee would likely not be able to sustain employment. (Tr. 86.)

5- OPINION AND ORDER

Spain's attorney questioned the VE and asked if an employee could sustain employment if her productivity was ten percent lower than her coworkers, to which the VE responded in the negative. (Tr. 88.) When asked if Spain could keep her therapy companion cat at these jobs, the VE responded that the security guard position would likely not allow the presence of her cat, but the office helper position might. (Tr. 92-93.)

In a written decision issued on March 14, 2014, the ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a)(4), and found that Spain was not disabled. The Social Security Administration Appeals Council denied Spain's petition for review, making the ALJ's decision the Commissioner's final decision. Spain timely appealed to federal court.

## THE FIVE-STEP SEQUENTIAL PROCESS

### I.     LEGAL STANDARD

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are as follows:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal [one of the listed impairments]? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. The claimant bears the burden of proof for the first four steps in the process. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the

burden at any of the first four steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## II.    THE ALJ'S DECISION

At the first step of the sequential process, the ALJ found that Spain had not engaged in substantial gainful activity since June 1, 2007, the alleged onset date. (Tr. 32.) At the second step, the ALJ found that Spain had the severe medically determinable impairments of borderline intellectual functioning, PTSD, dysthymia, bipolar disorder, learning disorder NOS, obesity, and obstructive sleep apnea. (Tr. 32.) The ALJ found Spain's bursitis and ADHD to be non-severe impairments. (Tr. 32-33.)

At the third step, the ALJ found that Spain's combination of impairments was not the equivalent of any of those on the Listing of Impairments. The ALJ then assessed Spain's RFC and found that she could perform light work subject to the following limitations:

> [Spain] can stand/walk 8 hour and sit 8 hours with normal breaks in an 8-hour workday. The claimant can never reach overhead bilaterally. The claimant can understand, remember and carry out only simple instructions that can be learned in 30 days or less, can have occasional public contact, but no work directly with the public, occasional coworker contact, but no group tasks, and no work with money or a need for formal recordkeeping (i.e., accounting or data entry). The claimant would need a supervisor to check in once per shift to answer questions. The claimant must avoid exposure to workplace hazards such as unprotected heights or dangerous machinery. She would be expected to be off task up to 5% of

the work day. The claimant must be permitted to take written notes when given instructions.

(Tr. 34.)

At the fourth step, the ALJ concluded that Spain could not perform her past relevant work as a fast food worker. (Tr. 39.)

At the fifth step, the ALJ concluded that Spain could perform jobs that exist in significant numbers in the national economy, including office helper, security guard, and meter reader. (Tr. 39-40.) Accordingly, the ALJ concluded that Spain was not disabled, as defined by the Social Security Act, during the relevant time period.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or [are] based on legal error." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett*, 180 F.3d at 1097). Instead, the district court must consider the entire record, weighing both the evidence that supports the Commissioner's conclusions, and the evidence that detracts from those conclusions. *Id.* However, if the evidence as a whole can support more than one rational interpretation, the ALJ's decision must be upheld; the district

court may not substitute its judgment for the judgment of the ALJ. *Bray*, 554 F.3d at 1222 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

Spain alleges the ALJ erred by improperly assessing: (A) her subjective symptom testimony; (B) "other source" evidence; and (C) medical opinion evidence. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.   SUBJECTIVE SYMPTOM TESTIMONY

### A.   Applicable Law

In the Ninth Circuit, absent an express finding of malingering, an ALJ must provide specific, clear, and convincing reasons for rejecting a claimant's testimony:

> Without affirmative evidence showing that the claimant is malingering, the [ALJ]'s reasons for rejecting the claimant's testimony must be clear and convincing. If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 597 (9th Cir. 1999) (citations omitted). Clear and convincing reasons for rejecting a claimant's subjective symptom testimony include "conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 6:11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly

contrary to 42 U.S.C. § 423(d)(5)(A)." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))).

In assessing a claimant's credibility, an ALJ may also consider (1) "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid," and (2) "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). If the ALJ's credibility finding is supported by substantial evidence in the record, district courts may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Morgan*, 169 F.3d at 600).

The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-3p, *available at* 2016 WL 1119029 (superseding SSR 96-7p). However, the ALJ's March 2014 decision was issued before SSR 16-3p became effective and there is no binding precedent establishing that this new ruling applies retroactively. *See Ashlock v. Colvin*, No. 3:15-cv-05767 DWC, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date); *see also Garner v. Colvin*, 626 Fed. App'x 699, 701 (9th Cir. 2015) ("[W]e cannot assign error to the ALJ for failing to comply with a regulation that did not exist at the time.").

///

///

///

B.     Application of Law to Fact

There is no affirmative evidence that Spain is malingering and, therefore, the ALJ was required to provide specific, clear, and convincing reasons for discrediting Spain's testimony. As explained below, the Court concludes that the ALJ satisfied the standard.

The ALJ discredited Spain's subjective testimony because she left her job for reasons unrelated to her allegedly disabling conditions. (Tr. 35.) Spain testified that she would still be working at Wendy's if she had not been arrested, which is a clear and convincing reason to doubt her allegation of being unable to work as the result of her impairments. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (a plaintiff's reason for leaving their job is a valid credibility consideration).

The ALJ also discredited Spain because she sought employment, but was unsuccessful due to her criminal history and because she was on probation. (Tr. 35.) Indeed, Spain testified at the hearing that businesses refused to hire her because of her criminal record. (Tr. 61.) A plaintiff's effort to obtain employment, despite claims of disabling conditions, is a clear and convincing reason to doubt the claimant's testimony that she is unable to work as the result of her impairments. *See Bray,* 554 F.3d at 1227; *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996); *Rogal v. Colvin*, 590 F. App'x 667, 670 (9th Cir. 2014).

The ALJ also found that Spain's activities of daily living were inconsistent with her alleged impairments. (Tr. 35.) Testimony inconsistent with a plaintiff's daily activities is a clear and convincing reason to discount her subjective testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Spain alleged that she was unable to work because of her conditions, yet she was able to volunteer twenty hours per week at the Habitat for Humanity ReStore, care for her father, care for her sister's two children, take a computer class, and clean her father's

house. (Tr. 73-75.) The ALJ did not err in citing these activities of daily living to discredit Spain's testimony.

The ALJ also discounted Spain's testimony because she stated that she needed her therapy cat in order to work, but attended the administrative hearing without her cat and did not appear anxious or uncomfortable. (Tr. 35.) The ALJ did not err by using her own observations at the hearing to identify inconsistencies in Spain's testimony. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

To the extent other reasons asserted by the ALJ were invalid, any such error is harmless. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (the ALJ's credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld). The ALJ cited specific, clear, and convincing reasons to discredit Spain's subjective symptom testimony, and those reasons were supported by substantial evidence in the record.

## II.    LAY WITNESS TESTIMONY

### A.    Applicable Law

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). Such testimony cannot be disregarded without providing specific reasons that are germane to each witness. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities,

12- OPINION AND ORDER

and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 10–1432, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012).

### B. Application of Law to Fact

The ALJ gave social worker Jeremy Springer's opinion only "some" weight, because he was not an acceptable medical source and his opinion was inconsistent with the record as a whole. While Mr. Springer is not an acceptable medical source, he is an "other source" under the Act, and his opinion must be considered. 20 C.F.R. § 404.1513(d)(1). The ALJ clearly considered Mr. Springer's opinion, and did not err by giving it only "some" weight. (Tr. 39.)

The ALJ gave Mr. Springer's opinion limited weight because it was inconsistent with Spain's testimony, current volunteer efforts, and past work history. (*Id.*) Spain volunteers twenty hours per week at a Habitat for Humanity ReStore, and was able to sustain employment at Wendy's for four years. These facts contradict Mr. Springer's opinion that Spain "would [not] respond well to criticism from supervisors and would likely come to avoid the work setting altogether, or be triggered into a depressive or hypomanic episode which would further negatively impact her work." (Tr. 690.) The ALJ was correct that Spain has demonstrated her ability to function effectively in a work-like setting, and the ALJ did not err in assigning limited weight to Mr. Springer's opinion in light of this contradiction. See *Crosby v. Comm'r of Soc. Sec. Admin.*, 489 Fed. App'x. 166, 168 (9th Cir. 2012) (a claimant's ability to work concurrently with longstanding conditions is a clear and convincing reason to doubt the claimant's credibility).

///

///

///

13- OPINION AND ORDER

### III.   Medical Evidence

#### A.   Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the ALJ must determine credibility and resolve the conflict." *Id.* (quoting *Thomas*, 278 F.3d at 956-57). "An ALJ may only reject a treating physician's contradicted opinions by providing specific and legitimate reasons that are supported by substantial evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions, however, is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

///

///

B.     **Application of Law to Fact**

Spain argues that the ALJ failed to offer legally sufficient reasons for rejecting the opinion of Dr. Alvord, her examining psychologist. Dr. Alvord's opinion conflicts with the opinions of the non-examining state agency medical consultants, and therefore the ALJ was required to provide specific and legitimate reasons for assigning limited weight to Dr. Alvord's opinion. *Batson*, 359 F.3d at 1195. The ALJ met the required standard.

The ALJ applied "little" weight to Dr. Alvord's opinion because he based his opinion primarily on inaccurate information provided by Spain during the examination. (Tr. 38.) Concluding that a medical opinion is based on unreliable information is a specific and legitimate reason for giving less weight to that medical opinion, and the ALJ's conclusion here is supported by substantial evidence in the record. *See, e.g., Tommasetti*, 533 F.3d at 1041 (holding that an ALJ may reject a physician's opinion based primarily on a plaintiff's discredited subjective symptom statements).

Dr. Alvord submitted a letter to the Appeals Council attempting to refute the ALJ's reasons for giving his opinion little weight. (Tr. 700.) Addressing the ALJ's finding that Spain had misrepresented her employment history, Dr. Alvord explained that:

> Ms. Spain's failure to endorse a history of consistent occupational functioning is likely a reflection of her level of distress during the encounter, which is consistent with chronic posttraumatic stress disorder (especially in a situation where she is in the presence of an authority figure).

(Tr. 700-01); *but see Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (noting that a doctor's "opinion is all the less persuasive since it was obtained by [the claimant] only after the ALJ issued an adverse determination").

Dr. Alvord's post hoc analysis attempting to explain Spain's lack of candor during the examination is not supported by the record. For example, Spain's PTSD did not appear to affect

15- OPINION AND ORDER

her memory in interviews with Dr. Cooley or with the ALJ, who are both authority figures. At her interview with psychologist Dr. Cooley in connection with her criminal case, Spain was cooperative and accurately recalled a detailed job history. (Tr. 284.) Furthermore, that interview showed that Spain was cooperative with the police and remembered fifteen different businesses at which she had written fraudulent checks in recent months. (Tr. 279.) At the administrative hearing in front of the ALJ, Spain also accurately recalled her job history. (Tr. 62-65.) These were all stressful situations in front of authority figures, yet Spain was able accurately to recall relevant events with clarity. The record refutes Dr. Alvord's post-hearing assessment that Spain's PTSD, or distress caused by authority figures, caused her to misrepresent her job history.

In addition to misrepresenting her employment history during her examination with Dr. Alvord, Spain was less than credible on other topics. For example, she reported to Dr. Alvord that she had suicidal thoughts and described symptoms of hypomania, yet she did not endorse suicidal thoughts to Judy Vogelsang, a counselor, in over one year of counseling sessions (Tr. 403-43), and did not report suicidal thoughts to Jeremy Springer, her social worker of over one year. (Tr. 598-617.) Further, Spain told Dr. Alvord that she was afraid to leave the house and suffered from social anxiety (Tr. 625), yet the record reflects that she walked dogs, babysat children for pay (Tr. 406), and attended group therapy. (Tr. 431-35, 437-39.) In addition, she told the Office of Vocational Rehabilitation that she wanted a job where she could "answer phones, greet people and maybe show people where things are" (Tr. 264), and the rehabilitation counselor noted that Spain was "good with people." (Tr. 269.) Substantial evidence supports the ALJ's conclusion that Dr. Alvord's opinion was based in large part on Spain's lack of credibility during the interview.

The ALJ gave specific and legitimate reasons for assigning little weight to Dr. Alvord's opinion, and those reasons were supported by substantial evidence in the record. To the extent other reasons asserted by the ALJ were in error, the Court finds that any such error is harmless. *Batson*, 359 F.3d at 1197.[1]

## CONCLUSION

Based on the foregoing, the Court AFFIRMS the Commissioner's decision denying Spain's application for benefits.

DATED this 8th day of February, 2017.

_____
Stacie Beckerman
United States Magistrate Judge

---

[1] Spain's arguments that the Commissioner did not meet her burden at Step Five are based upon the same arguments already rejected by the Court herein.

The ALJ gave specific and legitimate reasons for assigning little weight to Dr. Alvord's opinion, and those reasons were supported by substantial evidence in the record. To the extent other reasons asserted by the ALJ were in error, the Court finds that any such error is harmless. *Batson*, 359 F.3d at 1197.[1]

## CONCLUSION

Based on the foregoing, the Court AFFIRMS the Commissioner's decision denying Spain's application for benefits.

DATED this 8th day of February, 2017.

_____
Stacie Beckerman
United States Magistrate Judge

---

[1] Spain's arguments that the Commissioner did not meet her burden at Step Five are based upon the same arguments already rejected by the Court herein.

17- OPINION AND ORDER